**Supreme Court**

No. 2016-132-C.A.

No. 2017-400-C.A.

(P1/99-2303A)

State                              :

   v.                              :

Jeffrey Murray.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| State | : |
| v. | : |
| Jeffrey Murray. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The defendant, Jeffrey Murray, appeals from both a Superior Court judgment adjudicating him a probation violator and a Superior Court order denying his motion to terminate imprisonment.[1]  These consolidated appeals came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in the appeals should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that the appeals may be decided without further briefing or argument.  For the reasons set forth herein, we affirm both the judgment and the order.

---

[1] Although a Rule 12A statement was filed on defendant's behalf by the Rhode Island Office of the Public Defender, defendant moved to proceed *pro se*, to which the public defender had no objection.  We granted that motion, and defendant thereafter filed a supplemental memorandum and was heard on the show cause calendar *pro se*.

# I

## Facts and Travel

### A

### Probation Violation

On April 18, 2000, defendant pled guilty to one count of first-degree sexual assault, for which he received a sentence of twenty years, with five years to serve and the remainder suspended, with probation, and one count of assault with a dangerous weapon, for which he received a ten-year suspended sentence, with probation, to be served concurrently. Subsequently, defendant twice pled nolo contendere, in 2010 and 2012, to charges of failing to register as a sex offender, for which he was also sentenced to terms of imprisonment and probation.

On July 8, 2015, the state filed a probation-violation report in the Newport County Superior Court, pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure, alleging that defendant had violated his probation in all three cases by failing to keep the peace and be of good behavior. Specifically, the report indicated that defendant was "under an active Newport Police investigation for the domestic strangulation, domestic kidnapping and domestic [first] degree sexual assault of his girlfriend." The report noted that "[s]aid violation of probation is not contingent upon any specific criminal offense."

At the probation-violation hearing held over four days in late 2015 and early 2016 before a justice of the Superior Court, the complaining witness testified as to the events that allegedly took place between June 26, 2015, and June 28, 2015, at defendant's apartment on Elm Street in

Newport.[2]  Her testimony included graphic details of sexual assault and strangulation that followed her admission to defendant that she had been unfaithful to him while he had been incarcerated.  She testified that she feared being harmed and therefore remained at defendant's side all weekend.  She explained that much of the time over that weekend was spent placating defendant by staying with him, and that her ultimate plan was to notify the police when her father picked her up on Sunday morning.

Following the complaining witness's testimony and the testimony of other witnesses involved in the case, including her father and the investigating police officers, as well as the admission of numerous exhibits, such as text messages, police reports, and statements to the police, the hearing justice rendered a bench decision.  He began by noting that the burden was "on the [s]tate to reasonably satisfy the [c]ourt that the defendant has failed to keep the peace and be of good behavior."[3]  He noted also that "a so-called 32(f) violation hearing is a civil proceeding and the evidence doesn't have to rise actually to the level of a criminal offense in order to constitute failing to keep the peace and be of good behavior."

Next, the hearing justice reviewed the evidence and testimony presented at the hearing, acknowledging defendant's statements to police at the time of the incident.  He found that defendant "in his own words confirmed [to the police] the fact that he had imprisoned [the complaining witness], by preventing her from leaving 36 Elm Street * * * when he arrived

---

[2] For purposes of this opinion, a precise recitation of the sordid details of the acts allegedly committed by defendant is not necessary.  Although there was significant, and at some points appalling, testimony from the complaining witness, we do not deem it necessary to delve into the details.

[3] Rule 32(f) of the Superior Court Rules of Criminal Procedure was amended effective June 21, 2016, after the decision finding defendant a probation violator in the instant case was rendered, to provide that no revocation of probation "shall occur unless the [s]tate establishes by a *fair preponderance of the evidence* that the defendant breached a condition of the defendant's probation or deferred sentence or failed to keep the peace or remain on good behavior." (Emphasis added.)

there[-]after learning from a co-worker that she had been seen leaving his apartment * * * with somebody[.]" Additionally, the hearing justice noted that defendant, in his own statement to the police, "says he pushes her back inside and makes her go back into the room upstairs where she had already locked the door and prevented her from leaving the apartment[.]" According to the hearing justice, "[t]hat in and of itself, without anything further, would certainly constitute a failure to keep the peace and be of good behavior."

Following a detailed review of the complaining witness's testimony, the hearing justice noted that she had "readily admitted her issues" and "didn't try to gild the lily," and "basically said that [defendant] forced her to do the acts * * * which would certainly constitute a sexual assault under the statute." He addressed her trip out of the apartment with defendant to a Cumberland Farms store over the weekend, noting that the complaining witness in her testimony had pointed out that the surveillance video showed that she was crying and using her sunglasses to cover up. The hearing justice also addressed defendant's assertions that, if she believed she was in danger while she was with defendant that weekend, she could have asked for help or gone to the police. However, he found her explanation "to be credible, that she was waiting until Sunday when her father would come[.]"

Regarding the complaining witness's multiple statements to police, the hearing justice found that "[w]hile there are some inconsistencies between the statements, which is certainly to be expected, which is really an indicia of truth or credibility, if the stories matched exactly you would think that they were rehearsed and made up, but they were in all important respects consistent." The hearing justice found that much of her testimony was corroborated by defendant in his statement to police, as well as by other witnesses. He ultimately found that defendant had certainly "failed to keep the peace and be of good behavior by having or holding

her against her will, preventing her from leaving 36 Elm Street in his room at the top [of] the stairs[.]" The hearing justice determined that he was "convinced beyond a reasonable doubt as [to] those facts which this [c]ourt found based upon the credible testimony of [the complaining witness]."

The hearing justice determined that defendant had approximately fourteen years and five months remaining on the suspended sentence imposed in P1/99-2303A, and he ordered that defendant serve thirteen years of that sentence. Judgment was entered on January 28, 2016. The defendant filed a timely notice of appeal on February 12, 2016.

**B**

**Motion to Terminate Imprisonment**

While his first appeal was pending, defendant filed a *pro se* motion in the Superior Court to terminate his sentence of imprisonment, asserting at the hearing on the motion that, because the underlying District Court complaint against him concerning the events of June 2015 was dismissed, according to defendant for lack of probable cause, the provisions of G.L. 1956 § 12-19-18(b)(5) mandated that his imprisonment be terminated. The motion was heard before a second hearing justice, sitting in Providence County, who, in response, read from the Rule 48(a) dismissal filed by the state in that underlying case, which stated: "[T]he [s]tate is dismissing these charges in the interest of sparing the victim any further trauma from repeated court appearances. This dismissal shall in no way be construed to imply that the [s]tate indicates a lack of probable cause or any doubt of the culpability of the defendant." The state objected to defendant's motion, arguing at that initial hearing that the underlying District Court charges against defendant were dismissed because the state was "satisfied with the sentence as well as sparing the victim of [*sic*] any further hearing." The state further argued that defendant had not

demonstrated any of the five reasons enumerated in § 12-19-18(b) that would mandate that his imprisonment be terminated.

The court eventually held an evidentiary hearing. The first witness to testify was assistant attorney general Roger Demers, who was the prosecutor at defendant's probation-violation hearing. Demers testified, in response to questioning by the defendant, that he could not recall being told by the lead investigator assigned to the case, Detective Jacque Wuest of the Newport Police Department, on the day the probation-violation report was filed, whether there was probable cause to support the underlying criminal charges against defendant. He did, however, "remember seeing that [there was no probable cause to charge him with a crime] in one of her early reports."

After identifying the Rule 48(a) dismissal filed in the District Court case, Demers testified that the state had dismissed the charges against defendant to ensure that the complaining witness would not be put through any more trauma, including, according to Demers, the "trauma of being sexually assaulted by the defendant and the trauma of having to testify about that sexual assault and undergo a fairly lengthy cross-examination, much of it having to do with irrelevant questions." He testified further that the "main input was from the victim herself" in the state's decision to dismiss the underlying charges against defendant; according to Demers, the complaining witness "did not want to continue to have to suffer through this." He testified that there was no doubt in his mind that there was probable cause in the underlying case and that defendant was culpable for the acts alleged.

The defendant then called Det. Wuest as a witness, to which the state objected, arguing that only the state had the discretion to dismiss the charges, and, therefore, the testimony of Det.

Wuest was not relevant. The hearing justice sustained the state's objection, but he allowed defendant to examine Det. Wuest as an offer of proof.[4]

After hearing the testimony, the hearing justice rendered a bench decision denying defendant's motion to terminate his sentence of imprisonment. He found that only the state had the authority to decide whether to proceed with or dismiss the charges, based upon the input of the complaining witness; ultimately, the hearing justice noted, it is the attorney general who has the final say. He found that Det. Wuest's testimony was not relevant to the determination of probable cause but that, even if it was, "what she initially said about probable cause was later retracted, at least implicitly[.]"

The hearing justice concluded by stating that "given the strictures of [§] 12-19-18(b)(5), the [c]ourt finds that Mr. Demers' testimony is very, very credible," and that there was "nothing the [c]ourt heard by way of cross, redirect or recross, or anything — in the event the [c]ourt was in error and should have considered Detective Wuest's testimony, there is nothing that undercut Mr. Demers' very credible testimony." He therefore denied defendant's motion.

An order was entered denying defendant's motion to terminate imprisonment. The defendant filed a premature but timely notice of appeal on August 2, 2017.[5]

---

[4] Although the testimony of Det. Wuest was an offer of proof and not admitted into evidence, it is important to note that while Det. Wuest testified that *initially* there was not enough probable cause to charge, once she conducted an investigation, the police "determined there was enough probable cause to charge, and the AG agreed with us, so we charged."

[5] This Court has consistently considered a notice of appeal filed prior to the entry of the judgment or order appealed from to be timely. *See, e.g.*, *State v. Chase*, 9 A.3d 1248, 1252 n.2 (R.I. 2010) (holding that "[a]lthough [the] defendant's notice of appeal was premature, it was nevertheless valid"); *Otero v. State*, 996 A.2d 667, 670 n.3 (R.I. 2010) (same); *Bleau v. State*, 968 A.2d 276, 278 n.1 (R.I. 2009) (mem.) (same).

## II

## Discussion

## A

## Probation Violation

On appeal from the adjudication that he violated his probation, defendant submits that the hearing justice acted arbitrarily and capriciously in finding that defendant had violated the terms of his probation. The defendant further argues that the case should be remanded for consideration under the since-enacted "fair preponderance of the evidence standard" under Rule 32(f).

## 1

## Standard of Review

"At a probation-violation hearing, the sole issue for a hearing justice is whether the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *Neufville v. State*, 172 A.3d 161, 165 (R.I. 2017) (brackets and deletions omitted) (quoting *State v. Beaudoin*, 137 A.3d 726, 731 (R.I. 2016)). "A probation-violation hearing is 'not part of a criminal prosecution;' therefore, 'the burden of proof at a probation-violation hearing is much lower than the standard of beyond a reasonable doubt used in criminal trials.'" *Id.* (quoting *State v. Raso*, 80 A.3d 33, 42 (R.I. 2013)). "To determine whether the defendant has committed a violation, the hearing justice weighs the evidence and assesses the credibility of the witnesses." *Id.* (quoting *Beaudoin*, 137 A.3d at 731-32).

"On review, 'this Court accords great deference to the hearing justice's credibility assessments.'" *Neufville*, 172 A.3d at 165 (brackets omitted) (quoting *Beaudoin*, 137 A.3d at 732). "It is well founded that this Court 'will not second-guess supportable credibility

assessments of a hearing justice in a probation-revocation hearing.'" *Id.* (quoting *Beaudoin*, 137 A.3d at 732). "Instead, this Court's 'review is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *Id.* (quoting *Beaudoin*, 137 A.3d at 732).

**2**

**Analysis**

In support of his contention that the hearing justice acted arbitrarily or capriciously in finding the complaining witness's testimony to be credible, defendant asserts that her story was a "far-fetched and outrageous tale" and that it was "erroneous for [the probation-violation hearing justice] to credit her testimony in these highly questionable circumstances," arguing that the testimony was "essentially uncorroborated" and "improbable[.]"

Our review of the record reflects that the hearing justice considered the tone of the complaining witness's testimony, the corroboration of her testimony by other witnesses and other evidence admitted in this case, and the fact that she had "readily admitted her issues." Indeed, the hearing justice carefully considered the minor inconsistencies in her testimony, ultimately determining them to be "really an indicia of truth or credibility," reasoning that a perfectly matched story would seem to be false or rehearsed. Importantly, the hearing justice noted that defendant himself, in his statements to police, corroborated portions of the complaining witness's story that supported a finding that he had breached the peace, in particular that he had pushed her back inside and prevented her from leaving the apartment. It is clear to us, based upon our review of the record, that the hearing justice did not act arbitrarily or capriciously when he made his finding that the complaining witness was a credible witness.

The defendant also asks this Court to remand this case for a new probation-violation hearing utilizing the new burden of proof contained in Rule 32(f), given that the new standard

was enacted while the violation adjudication was pending direct review in this Court. He argues that the state is now required to prove by a "fair preponderance of the evidence" that defendant had breached a condition of his probation by failing to keep the peace. However, a review of the record reveals that the hearing justice, when rendering his bench decision on the probation violation, stated that he was "convinced beyond a reasonable doubt as [to] those facts which this [c]ourt found based upon the credible testimony of [the complaining witness]." It goes without saying that the standard of proof of beyond a reasonable doubt is a higher standard than either the fair preponderance of the evidence standard or the reasonable satisfaction standard, and that, as such, there is no question that the "fair preponderance of the evidence" standard would have been met in this case. *See Neufville*, 172 A.3d at 165. We therefore conclude that this case should not be remanded for consideration under the new standard.

**B**

**Motion to Terminate Imprisonment**

Next, defendant argues that the second hearing justice erred in denying his motion to terminate his imprisonment, which motion was based on defendant's assertion that the requirements of § 12-19-18(b)(5) were satisfied under the facts of his case.

**1**

**Standard of Review**

"It is well established that the factual findings of a [hearing] justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the [hearing] justice overlooked or misconceived material evidence." *Kilmartin v. Barbuto*, 158 A.3d 735, 746-47 (R.I. 2017) (quoting *Cote v. Aiello*, 148 A.3d 537, 544 (R.I. 2016)). "This Court consistently has held that factual findings of a [hearing] justice

- 10 -

sitting without a jury are granted an extremely deferential standard of review." *Id.* (quoting *Cote*, 148 A.3d at 544). This Court reviews "questions of statutory interpretation *de novo.*" *State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013) (quoting *Campbell v. State*, 56 A.3d 448, 454 (R.I. 2012)).

**2**

**Analysis**

After a careful review of the record, we conclude that the hearing justice did not overlook or misconceive material evidence or otherwise commit clear error. The hearing justice held an evidentiary hearing, at which defendant had the opportunity to examine and cross-examine both Demers and Det. Wuest. The defendant's core argument in support of his motion to terminate imprisonment was that § 12-19-18 applied to the facts of this case. Section 12-19-18 states, in pertinent part:

> "(b) Whenever any person, after an evidentiary hearing, has been sentenced to imprisonment for violation of a suspended sentence or probationary period by reason of the alleged commission of a felony or misdemeanor said sentence of imprisonment shall, on a motion made to the court on behalf of the person so sentenced, be quashed, and imprisonment shall be terminated when any of the following occur on the charge which was specifically alleged to have constituted the violation:
>
> "* * *
>
> "(5) The charge fails to proceed in District or Superior Court under circumstances where the state is indicating a lack of probable cause, or circumstances where the state or its agents believe there is doubt about the culpability of the accused."

The defendant asserts before this Court that, by dismissing the underlying District Court complaint, the "state [was] indicating a lack of probable cause" and an "agent believe[d] there [was] doubt about the culpability of the [defendant,]" and that, therefore, his imprisonment should be terminated under § 12-19-18(b)(5). In support of this argument, defendant points to a

- 11 -

statement by Det. Wuest suggesting that, at one point early in the case, there was insufficient probable cause to arrest defendant. He argues that, in light of Det. Wuest's testimony in this regard, the hearing justice erred in his application of § 12-19-18. This argument is without merit for two reasons.

First, while Det. Wuest did testify in the offer of proof that, prior to a full investigation of the case, there was a lack of probable cause to arrest defendant, she clearly also testified that, after further investigation, including interviewing witnesses and gathering evidence, there was sufficient probable cause and therefore defendant was subsequently arrested. Section 12-19-18(b)(5) requires that "[t]he charge fails to proceed in the District * * * Court under circumstances where the state is indicating a lack of probable cause[.]" The fact that probable cause may have been lacking preliminarily does not mean that § 12-19-18(b)(5) is applicable, especially when future investigations establish the existence of probable cause. *See, e.g.*, *O'Connell v. Walmsley*, 156 A.3d 422, 428 (R.I. 2017) (holding that "although we must give words their plain and ordinary meanings, in so doing we must not construe a statute in a way that would result in absurdities or would defeat the underlying purpose of the enactment" (brackets and deletion omitted) (quoting *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 681 (R.I. 1999))).

Second, as noted *supra*, the Rule 48(a) dismissal by the state in the District Court specifically indicated that the reason for the dismissal of the three charges against defendant was to "spar[e] the victim any further trauma[,]" and that it was not because of "lack of probable cause" or any "doubt about the culpability about the accused[,]" as required by § 12-19-18(b)(5). At the hearing on defendant's motion to terminate imprisonment, Demers was found to have credibly affirmed those statements as contained in the Rule 48(a) dismissal.

As such, there is ample evidence to support the hearing justice's conclusion that § 12-19-18(b)(5) is inapplicable to the instant case. There is no indication in the record that this is a case that failed to proceed because of lack of probable cause. Accordingly, we affirm the order denying the defendant's motion to terminate imprisonment.

## III

## Conclusion

For the reasons stated herein, we affirm the judgment and the order on appeal. We remand the papers to the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jeffrey Murray. |
| **Case Number** | No. 2016-132-C.A.<br>No. 2017-400-C.A.<br>(P1/99-2303A) |
| **Date Opinion Filed** | October 16, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Stephen P. Nugent<br>Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State:<br><br>Christopher R. Bush<br>Department of Attorney General<br>For Defendant:<br><br>Jeffrey Murray, Pro Se |